IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JODIE KEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:15CV1039 |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Jodie Kee ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on June 6, 2012, alleging a disability onset date of May 19, 2011, later amended to November 1, 2011. (Tr. at 13, 39, 114, 213-16.)[2] Her claim was denied initially (Tr. at 98-112, 135-38), and that determination was upheld on

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Administrative Record [Doc. #5].

reconsideration (Tr. at 113-27, 140-47). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 148-49.) Plaintiff attended the subsequent hearing on December 19, 2013, along with her attorney. Plaintiff's husband and an impartial vocational expert also testified. (Tr. at 13.)

The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 30.) On November 13, 2015, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-6.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since November 1, 2011, her amended alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: "degenerative disc disease of the lumbar and cervical spine, status-post multiple surgeries; allergic rhinitis/reactive airway disease; [and] history of attention-deficit hyperactivity disorder." (Tr. at 15.) The ALJ found at step three that these impairments failed to meet or equal any disability listing. (Tr. at 17-19.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

5

light work with myriad additional postural, manipulative, environmental, and mental limitations. (Tr. at 19.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that Plaintiff could not return to any of her past relevant work. (Tr. at 28.) However, he found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national economy. (Tr. at 28-30.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 30.)

Plaintiff now challenges the ALJ's decision on three fronts. Specifically, she contends that the ALJ erred in (1) finding at step three of the sequential analysis that Plaintiff's back impairment did not meet or medically equal 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.04 (hereinafter Listing 1.04), (2) finding that Plaintiff has the RFC to perform a limited range of light work, and (3) failing to properly weigh the opinion evidence. (Pl.'s Br. [Doc. #8] at 3.)

A.  Listing Analysis

At step three of the sequential analysis, the ALJ considers whether any impairment meets or equals one or more of the impairments listed in Appendix I of the regulations. In analyzing the evidence at step three, an ALJ is not required to explicitly identify and discuss every possible listing; however, he must provide sufficient explanation and analysis to allow meaningful judicial review of his step three determination, particularly where the "medical record includes a fair amount of evidence" that a claimant's impairment meets a disability listing. Bailey v. Colvin, No. 1:14CV303, 2015 WL 5227646, at *3 (M.D.N.C. Sept. 8, 2015) (quoting Radford, 734 F.3d at 295). "Where such evidence exists but is rejected without discussion, 'insufficient legal analysis makes it impossible for a reviewing court to evaluate

whether substantial evidence supports the ALJ's findings.'" Id. (citations omitted); see also Brown v. Colvin, 639 F. App'x 921, 923 (4th Cir. 2016) (remanding where the "medical record [was] not so one-sided that one could clearly decide, without analysis, that [the listing in question was] not implicated")).

Here, in determining that Plaintiff's back impairment failed to meet the requirements of Listing 1.04, the ALJ found as follows:

> The claimant's treatment records are not characterized by evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b, as required by Section 1.04 of the Listings.

(Tr. at 17.) As the above restatement of the listing reflects, Listing 1.04 consists of an introductory paragraph outlining two requirements: (1) a disorder of the spine (2) resulting in compromise of a nerve root or the spinal cord. If a claimant meets both of these requirements, she must then show that she meets one of the three additional sets of criteria set out in Part A, Part B, or Part C of the listing.[5] Part A further requires evidence of nerve root compression

---

[5] Plaintiff fails to specify which part of Listing 1.04 she claims to meet. However, given that the record clearly lacks any evidence of spinal arachnoiditis or an "inability to ambulate effectively" as required, respectively, by Parts B and C of the listing, the Court confines its review to Listing 1.04A. Notably, "the ability to ambulate effectively is not responsive to the question whether a claimant meets Listing 1.04A; rather, it is required by Listing 1.04C." Roybal v. Colvin, No. 1:11CV389, 2014 WL 2574509, at *1 (M.D.N.C. June 9, 2014). To the extent that Defendant now contends that the inability to ambulate effectively should also be construed as a requirement of Listing 1.04A, in this case the ALJ's analysis did not include such a determination or rely on such a finding, and the Court will not rely on post-hoc rationalizations that are not apparent in the ALJ's

characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (i.e., weakness) accompanied by sensory or reflex loss, and, if the lower back is involved, a positive straight-leg raising test. 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.04A. Notably, the ALJ's step three determination in this case simply restates these requirements and does not include any analysis as to how the listing requirements were not met in this case. See Roybal v. Colvin, No. 1:11CV389, 2014 WL 2574509, at *1 (M.D.N.C. June 9, 2014) ("In this case, the ALJ quoted the entirety of Listing 1.04 but failed to specifically apply Listing 1.04A. . . . The ALJ never made a finding that the record did not contain evidence of nerve root compression or of the symptoms listed in the appendix. Thus, judicial review of the basis for the ALJ's denial of a finding under Listing 1.04A is not possible.").

Defendant generally argues that "Plaintiff presents no evidence to satisfy her burden of showing that she satisfied the requirements of this Listing." (Def.'s Br. [Doc. #10] at 7.) Defendant further specifies that Plaintiff failed to meet "two separate requirements in the Listing," namely "[c]ompromise of a nerve root (including the cauda equina) or the spinal cord" and "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." (Def.'s Br. at 7-8) (citing 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.04A).

---

decision. See Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943) (courts must review administrative decisions on the grounds upon which the record discloses the action was based); see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) ("[The ALJ] must articulate some legitimate reason for his decision."); Wyatt v. Bowen, No. 89-2943, 887 F.2d 1082 (table), 1989 WL 117940, at *4 (4th Cir. Sept. 11, 1989) (unpublished) ( "[T]he duty of explanation will be satisfied when the ALJ presents '[the court] with findings and determinations sufficiently articulated to permit meaningful judicial review,' which must include specific reference to the evidence producing [the ALJ's] conclusion." (quoting DeLoatche, 715 F.2d at 150), and citing Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985))).

Notably, in this case, there is no question that Plaintiff suffered from degenerative disc disease of both her lumbar and cervical spine, and her medical history includes 2 fusion surgeries on her cervical spine and 2 fusion surgeries on her lumbar spine. With respect to her cervical spine, Plaintiff's MRI results in January 2012 evidence "probable root compression" (Tr. at 346, 504). With respect to her lumbar spine, Plaintiff's MRI results in October 2011 likewise evidence "probable residual root compression" (Tr. at 502), and Plaintiff underwent decompression and fusion surgery on her lumbar spine in May 2011, which was ultimately unsuccessful, and further decompression and fusion surgery on her lumbar spine in December 2012. (Tr. at 326-32, 344, 437, 447, 495, 432-35, 485.) [6]

In terms of motor loss, Defendant cites treatment notes in which Plaintiff was noted to exhibit normal strength. (Def. Br. at 8) (citing Tr. at 357, 360, 365, 423, 438, 449). However, with respect to her lumbar spine, Plaintiff had "progressive weakness and profound pain" prior to her May 2011 lumbar surgery, and she reported "bilateral lower extremity weakness with numbness" on at least one occasion post-dating her May 2011 lumbar surgery. At that time, Plaintiff's neurosurgeon, Dr. Steven Poletti, further noted that Plaintiff exhibited a "limited range of motion of [the] lumbar spine, pain with extension, positive straight leg raising," "antalgic gait," "subjective dysethesia in the lower extremities," "slight[ly] diminished

---

[6] In the briefing, Defendant contends that "compromise of a nerve root" and "nerve root compression" are separate requirements of the Listing, and that a claimant must show both. As an initial matter, the ALJ never identified this basis for his step three finding, and the Commissioner's after-the-fact rationale cannot provide sufficient explanation for meaningful review by the courts. Furthermore, Defendant provides no basis for her argument that "compromise of a nerve root" and "nerve root compression" are distinct requirements of Listing 1.04A. A plain reading of the regulation instead reveals that Parts A, B, and C of the Listing set out the symptomatic requirements relating to various spinal disorders set out in the Listing's introductory paragraph, all of which involve nerve root or spinal cord compromise. Here, the record clearly includes evidence of a compromised nerve root which the ALJ rejected without explanation.

9

patellar tendon reflex bilaterally," and "[d]iminished sensation in the L5 distribution bilaterally." (Tr. at 486.) In addition to Dr. Poletti's treatment note, and as Defendant concedes, the record includes further evidence of the additional criteria set out in Part A of the listing, including neuro-anatomic distribution of pain (Tr. at 20, 342, 486, 479), limitation of motion of the spine (Tr. at 21, 326, 438, 486, 490, 479), sensory or reflex loss (Tr. at 58, 326, 486, 479), and positive straight-leg raising tests (Tr. at 326, 486, 490). Similarly as to Plaintiff's cervical spine, the record includes evidence of weakness, limitation of motion, and sensory or reflex loss. (Tr. at 58, 74, 341, 358, 376, 438, 477-78.) Accordingly, the Court finds that the "medical record [was] not so one-sided that one could clearly decide, without analysis, that [Listing 1.04A was] not implicated." Brown, 639 F. App'x at 923; see also Radford, 734 F.3d at 296 (holding that remand was required for further consideration of Listing 1.04 even where the plaintiff "exhibited no weakness, sensory loss, or limitation of motion during some examinations").

Moreover, to the extent Defendant may be contending that Plaintiff did not meet all of the requisite criteria simultaneously to satisfy Listing 1.04, the Fourth Circuit has clarified in Radford that "[a] claimant need not show that each symptom was present at precisely the same time—i.e., simultaneously—in order to establish the chronic nature of [her] condition. Nor need a claimant show that the symptoms were present in the claimant in particularly close proximity. . . . '[A]bnormal physical findings may be intermittent,' but a claimant may nonetheless prove a chronic condition by showing that [she] experienced the symptoms 'over a period of time,' as evidenced by 'a record of ongoing management and evaluation.'" 734 F.3d at 294 (citations omitted).

10

Given that Plaintiff has presented "a fair amount of evidence" that she meets Listing 1.04A, the ALJ's failure to adequately explain the reasoning behind his contrary conclusion precludes the Court from undertaking a "meaningful review" of his step three determination. See Radford, 734 F.3d at 296. As the Fourth Circuit reiterated in Fox v. Colvin, an adequate explanation under these circumstances involves the "'specific application of the pertinent legal requirements to the record evidence'"; an ALJ's bare statement that he considered a particular listing is "perfunctory and offer[s] nothing to reveal *why* he was making his decision." 632 F. App'x 750, 755 (4th Cir. 2015) (quoting Radford, 734 F.3d at 295). Moreover, in the present case, the ALJ's inclusion of the elements of Listing 1.04 at step three lends nothing to remedy his failure to apply these elements to the record evidence. Radford instructs that where, as here, there is conflicting evidence in the record as to whether the claimant satisfies a Listing, but insufficient analysis or explanation of the issue by the ALJ, remand offers the best course of action. 734 F.3d at 296. See also Roybal, 2014 WL 2574509, at *1 ("In this case, the ALJ quoted the entirety of Listing 1.04 but failed to specifically apply Listing 1.04A. . . . Radford counsels that when the ALJ fails to explain her reasoning in denying a claim, the better course of action is to remand for further consideration."). Accordingly, the Court recommends remand of this matter to the ALJ.

2. Treating Physician Opinions

In light of the remand determination set out above, the Court need not reach the other matters raised by Plaintiff. However, the Court notes that Plaintiff also raises substantial concerns with regard to the ALJ's handling of her treating physicians' opinions in this case. Specifically, Plaintiff contends that the ALJ erred in assigning little or no weight to the

11

opinions of her treating primary care doctor, Dr. Rodriguez, and her treating surgeon, Dr. Poletti. Social Security Ruling ("SSR") 96-2p and 20 C.F.R. § 404.1527(c), collectively referred to as the "treating physician rule," generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c). However, if a treating source's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record," it is not entitled to controlling weight. See Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2; 20 C.F.R. § 404.1527(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. Where an ALJ declines to assign controlling weight to a medical opinion, he must "'explain in the decision the weight given' thereto and 'give good reasons in his . . . decision for the weight.'" Chirico v. Astrue, No. 3:10CV689, 2011 WL 6371315, at *5 (E.D. Va. Nov. 21, 2011) (unpublished) (quoting 20 C.F.R. § 404.1527(c)(2)). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thomas v. Comm'r of Soc. Sec., No. Civ. WDQ-10-3070, 2012 WL

670522, at *7 (D. Md. Feb. 27, 2012) (unpublished) (citing Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011)).

In this case, the ALJ noted Dr. Rodriguez's opinion, as Plaintiff's primary care provider, that Plaintiff had "moderate-to-severe chronic neck and back pain underscored by post-traumatic stress and ADHD," that she "had marked difficulty maintaining social functioning, particularly during episodes of anxiety or pain," and that she "frequently was unable to complete tasks in a timely manner due to marked deficiencies of concentration, persistence or pace secondary to pain." (Tr. at 22, 466-67.) In his narrative, Dr. Rodriguez stated that Plaintiff "has chronic moderat[e] to severe neck and back pain after multiple (4) spinal fusions." (Tr. at 467.) The ALJ also noted the opinion of Plaintiff's treating surgeon, Dr. Poletti, with respect to both her cervical spine impairment and her lumbar spine impairment, including that Plaintiff suffered from moderate-to-severe pain, that "she could sit for up to 60 minutes at a time, stand for up to 30 minutes at a time, occasionally lift 20 pounds and frequently lift 5 pounds," that she could occasionally bend and stoop, that she was limited in her ability to rotate her neck, and that she could only work 1 hour per day. (Tr. at 22-23, 477-80.) With respect to her cervical spine impairment, Dr. Poletti noted that Plaintiff was "status post two cervical fusions (before the age of 43). It is probable that she will require one or more in the future." (Tr. at 478.) With respect to her lumbar spine impairment, Dr. Poletti noted that Plaintiff "continues with persistent moderate to severe [lower back pain] despite 2 surgeries for L4-L5 fusion." (Tr. at 480.)

The ALJ gave "little weight" to Dr. Rodriguez's opinion and "no weight" and "partial weight" to Dr. Poletti's opinions. The ALJ noted inconsistencies with the treatment record, although it is not clear on review how the treatment records are inconsistent with the opinions. Indeed, Plaintiff's condition was sufficiently severe to require another surgery after the alleged onset date, with additional future surgery likely. The ALJ also pointed to "observations and findings of other medical sources of record." (Tr. at 22.) This is presumably a reference to the state agency physicians who reviewed Plaintiff's records in July and October 2012. However, the timeline in this case reflects that Plaintiff underwent her first lumbar fusion in May 2011, and Plaintiff's recovery was initially progressing positively. These were the extent of the records reviewed by the state agency physicians, and they concluded that she had responded well to surgery and reported improvement in her pain and symptoms. (Tr. at 101-02, 106, 118-19.) However, subsequent records reflect that the surgery was ultimately unsuccessful due to non-union, resulting in a second lumbar fusion surgery in December 2012. (Tr. at 437, 447, 495, 432-35.) In addition, the subsequent records also reflect a worsening of Plaintiff's cervical spine condition, and the likely need for additional surgery on her cervical spine. (Tr. at 79, 346, 438.) On internal administrative review, a later agency physician, Dr. Bittenger, noted that:

> The claimant has a history of lumbar degenerative disease. In May 2011 a lumbar fusion was performed. Hearing level [medical evidence of record] revealed that in 2012 claimant developed increased pain and imaging revealed nonunion of fusion which was symptomatic. On 12/27/12 a posterior fusion was performed. No post op encounters were documented in available [medical evidence of record]. There is insufficient evidence to rate this claim either currently or within a reasonable degree of medical certainty, projected 12 months from the time of surgery. More information is needed to include all additional post operative [medical evidence of record]. As this was the second

> fusion with [history of] pseudarthrosis this should include exams at least 3 months post op with imaging of the lumbar spine.

(Tr. at 129.) Thus, in light of the worsening of Plaintiff's condition and second lumbar fusion surgery in 2012, further medical evidence was needed for additional review. However, the ALJ did not obtain the assistance of a medical expert to review the additional records,[7] and the only subsequent opinion evidence is the opinion evidence from Dr. Poletti and Dr. Rodriguez. Thus, it is not clear how the findings or opinions of other medical sources would provide a basis for discounting the opinions of Dr. Poletti and Dr. Rodriguez.

Finally, the Court notes that in assigning little or no weight to the treating physician opinions, the ALJ relied heavily on Plaintiff's reported activities, including "regular cardiovascular exercise at a fitness center." (Tr. at 22.) Indeed, the ALJ cited Plaintiff's exercise and visits to the "gym" no less than 15 separate times in the opinion, including references to Plaintiff "participating in a supervised fitness program" (Tr. at 16), "going to the gym" (Tr. at 17), "go[ing] to the gym" (Tr. at 17), "exercising at a fitness center" (Tr. at 18), "regularly exercis[ing] in a fitness program" (Tr. at 20), "exercising at the fitness center and receiving help from a physiologist," (Tr. at 21), "exercising at the fitness center as a hobby" (Tr. at 21), "going to the gym regularly with cardiovascular exercise" (Tr. at 22), "having only slight back pain with regular cardiovascular exercise at a fitness center" (Tr. at 22), "regularly performing cardiovascular exercise in an attempt to lose weight" (Tr. at 23), "exercising" (Tr. at 23), coming from "the fitness center" (Tr. at 24), "attend[ing] water exercise class" (Tr. at

---

[7] Post-surgical records from December 2013 reflect that Plaintiff was still in pain, and still had weakness, loss of motion, and positive straight leg raising tests. (Tr. at 490.) As noted by the ALJ, the x-rays reflect that she is "stable," but it is not clear whether "stable" simply reflects no further deterioration in her condition, and because no further medical expert was consulted, the only medical sources to have opined on Plaintiff's condition after her second fusion surgery are Dr. Rodriguez and Dr. Poletti.

15

26), and "having only slight increase in her back pain with regular cardiovascular exercise" (Tr. at 26). In assessing Plaintiff's testimony and credibility, the ALJ noted that Plaintiff's testimony regarding her symptoms would "weigh in favor of a finding of disability" but "other factors outweigh these factors" and "[c]hief among these is the claimant's return to activity following her multiple neck and back surgeries. The record shows the claimant going to the gym and swimming/exercising regularly (as a reported hobby in September 2012); treatment notes from October 2013 show her doing cardiovascular exercise for weight loss, which only tended to aggravate her lower back slightly." (Tr. at 28.) However, a fair reading of the record reflects that the "fitness center" was the FirstHealth Carolinas Center where Plaintiff's physicians sent her for post-surgical recovery. (Tr. at 65 (testifying that the program was a "supervised program" at a "hospital-based fitness center"), 241, 308, 314.) Under supervision, she tried walking and working with a physiologist but was later limited to swim therapy classes and ultimately had to abandon those as well. (Tr. at 54, 64-65, 241, 304, 314, 421.) She was required to wear special equipment and could only swim in limited positions without moving her neck. (Tr. at 65, 245.) At the hearing, she described the swim therapy classes as "geriatric classes" where they "put a little belt around you." (Tr. at 66.) While the ALJ is tasked with weighing the evidence of record, the ALJ's decision to assign such significant weight to potentially mischaracterized evidence, including as a basis to reject treating physician opinions, also raises concerns with respect to whether the ALJ's decision is supported by substantial evidence.

Given all of these issues, the Court cannot conclude that substantial evidence supports the ALJ's decision to give little or no weight to the opinions of Plaintiff's primary care physician Dr. Rodriguez and Plaintiff's treating surgeon Dr. Poletti.

Further consideration of the Listings and of the treating physician evidence is required, but that further consideration and determination is for the ALJ in the first instance. Therefore, for all of these reasons, remand is appropriate in this case.

IV. CONCLUSION

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #9] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #7] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 1st day of March, 2017.

                                                        /s/ Joi Elizabeth Peake  
                                                      United States Magistrate Judge